Duncan M. Fort v. Commissioner.
Fort v. Commissioner
Docket No. 53543.
United States Tax Court
T.C. Memo 1955-261; 1955 Tax Ct. Memo LEXIS 78; 14 T.C.M. (CCH) 1038; T.C.M. (RIA) 55261; September 26, 1955
*78 Held, that the potential value of the common stock of McKay-Reece Company was not extinguished until the sale of the remaining assets of the company in 1943, and that said stock did not become worthless prior to that year. K. Harlan Dodson, Jr., Esq., for the petitioner. Homer F. Benson, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax for the taxable years 1944 through 1947 in the respective amounts of $244.24, $282.56, $203.49, and $209.00. Petitioner sold 168 shares of common stock of McKay-Reece Company in 1943 for 10 cents a share. The only issue is whether petitioner sustained a net capital loss in 1943 for carry-over purposes as a result of said sale or whether the stock in question was worthless prior to 1943. Findings of Fact The petitioner, Duncan M. Fort, a resident of Nashville, Tennessee, filed his individual Federal income tax returns for the taxable years 1944 through 1947 with the collector of internal revenue for the district of Tennessee. In the said tax returns filed for the taxable years 1944 through 1947, the petitioner claimed as deductible a net capital *79 loss carry-over of $1,000.00 for each of the taxable years respectively, on the basis of an asserted loss on the sale of 168 shares of common stock of McKay-Reece Company. McKay-Reece Company, a corporation organized under the laws of the State of Tennessee in 1916 with place of business in Nashville, Tennessee, engaged in the wholesale seed business from the date of its organization until its inventory was sold and its seed business terminated in March, 1934. The corporation continued to own a building with equipment pertinent thereto, together with a lot of ground, until these assets were sold on April 30, 1943. The sole business activity of the corporation from March, 1934 to April 30, 1943, consisted of the leasing of said building to Dobson-Hicks Company, a competitor, at a monthly rental of $250. The original stock of McKay-Reece Company consisted of 1,000 shares of common stock of $100.00 par value. In 1924 it issued 400 shares of preferred stock likewise of a par value of $100 per share. Petitioner acquired 168 shares of common stock of McKay-Reece Company. He purchased 8 shares in 1921, 50 shares in 1923, 10 shares in 1924, and in 1932 he received a gift of 100 shares *80 from his uncle, Duncan McKay. The basis of the donated stock for loss purposes was $45 per share. Petitioner was employed by McKay-Reece Company from the date it began business operations in 1916 until 1934 when its wholesale seed business operations ceased. His duties consisted of keeping books and selling. Later, he was elected secretary and treasurer of the corporation. As the result of severe financial losses, McKay-Reece Company ceased its wholesale seed business operations in March, 1934, and disposed of its inventory. Since 1934, petitioner has been employed by Dobson-Hicks Company as salesman and part-time manager. After the disposal of its inventory in 1934, no effort was made by or on behalf of McKay-Reece Company to raise sufficient working capital to re-engage in the wholesale seed business. On April 20, 1943, McKay-Reece Company sold its only remaining assets to Dobson-Hicks Company for $45,000. Out of the sum of $45,000 received for its assets in 1943, McKay-Reece Company paid the expenses of the sale and its indebtedness to the bank. The balance was distributed to the preferred stockholders. The holders of the common stock received no distribution on *81 liquidation of the corporate assets, there being no assets available therefor after distribution to the preferred stockholders. As of June 30, 1942, the assets of McKay-Reece Company consisted of the following (at book value): Cash
$ 1,485.59
Building and equipment (net after
depreciation)
41,504.18
Land
16,000.00
$58,989.77
As of June 30, 1942, the liabilities of McKay-Reece Company consisted of notes payable in the amount of $24,875. Preferred stock in the amount of $40,000 was outstanding as of the same date, at which time the amount of the notes and preferred stock exceeded the book value of the assets by $5,885.23. On April 20, 1943, the common stockholders of McKay-Reece Company, (including petitioner) sold the entire outstanding capital stock of that corporation, consisting of 1,000 shares of common stock, at ten cents per share to two individuals, petitioner receiving a total of $16.80 for his 168 shares. From 1916 to 1921, the business of McKay-Reece had been profitable, but its surplus was wiped out in the depression of 1921. The business showed some recovery after three or four years and was again profitable until 1932, when its surplus was *82 once more wiped out during depression conditions. The wholesale seed business was operated, however, until 1934 when its inventory was sold. Until the sale of its remaining assets in 1943, there was a reasonable hope and expectation that the assets of the corporation might exceed the total of its liabilities and preferred stock as a result of possible fluctuation in the value of such assets or re-engaging in the wholesale seed business or both. Opinion FISHER, Judge: Petitioner sold 168 shares of common stock of McKay-reece Company in 1943 for 10 cents a share and claimed a net capital loss carry-over for the years 1944 through 1947. Respondent determined that the stock became worthless at some indefinite time prior to 1943 and disallowed the deduction. The burden of proof was upon petitioner to establish that the stock did not become worthless prior to 1943, the year in which the stock was sold. The principles here applicable were expressed in , affd. (C.A. 7) . We said in that case (p. 1278): "The ultimate value of stock, and conversely its worthlessness, will depend not only on its current *83 liquidating value, but also on what value it may acquire in the future through the foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and can not be said to be worthless. The loss of potential value, if it exists, can be established ordinarily with satisfaction only by some 'identifiable event' in the corporation's life which puts an end to such hope and expectation." It is clear that a least as early as June 30, 1942, the common stock in question had no liquidating value. As stated in our Findings, the outstanding debts and preferred stock as of that date exceeded the book value of the assets by $5,885.23. We recognize, of course, that book value has no necessary relationship to actual value. The only evidence from which we can determine the actual value of the assets on hand on June 30, 1942, is *84 the sale price of the assets ($45,000) in early 1943. There is nothing in the record to indicate any substantial change in such value (or in any other balance sheet items) between the two dates. If we substitute the sale price of $45,000 for the book value of the assets other than cash as of June 30, 1942, the excess of liabilities and preferred stock over the value of the assets would have been a little over $18,000. The question of whether or not the common stock had potential value at least as late as January 1, 1943, presents a different problem, which is here not free from difficulty. The assets included a building which had been rented to a competitor, but which was available to McKay-Reece Company if the owners of the company had decided to re-engage in the wholesale seed business. The building was adaptable to use for such a purpose. The building, equipment and lot which comprised the assets as of January 1, 1943, had substantial value as demonstrated by the selling price of $45,000. There was uncontradicted testimony that there was an intention on the part of those responsible for the affairs of McKay-Reece Company to re-engage in such business during the period from 1934 *85 until the sale of the remaining assets in 1943. While the value of the testimony is weakened to a degree by the failure to make any definite plans and the lack of any effort to raise working capital, we think such intent, while vague, did exist and was bona fide until the sale of the remaining assets in 1943. We hold that the evidence supports the inference that the potential value of the common stock was not extinguished until the 1943 sale of assets. We think it clear that its potentiality had not been extinguished by the sale of the inventory in 1934, and that, in the meantime, there was no "identifiable event" to establish worthlessness until the sale in 1943. It is our view that there was a reasonable possibility that the common stock may have acquired value up to the 1943 sale either by fluctuation in the value of the assets of the corporation or as a result of re-engaging in the wholesale seed business, or both. Upon consideration of all of the circumstances, we hold that petitioner has met his burden of proving that the potential value of the common stock in question was not wiped out prior the sale of the remaining assets in 1943. Decision will be entered under Rule *86 50.